AO 106A  (08/18)  Application for a Warrant by Telephone or Other Reliable Electronic Means

# UNITED STATES DISTRICT COURT
for the
Middle District of Pennsylvania

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br><br>a grey Apple iPhone further described in Attachment A,<br>currently located at the Cumberland County Forensic<br>Laboratory, 1601 Ritner Highway, Carlisle, PA 17013 | )<br>)<br>)<br>)<br>)<br>) | Case No. 1:24- **MC-00981** |

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment "A"

located in the _____Middle_____ District of _____Pennsylvania_____ , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment "B"

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

- ☑ evidence of a crime;
- ☑ contraband, fruits of crime, or other items illegally possessed;
- ☑ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| Title 18 U.S.C. §922(g) | Possession of a firearm by prohibited person |
| Title 26 U.S.C. §5861(d) | Receiving/possessing a NFA firearm not registered to the possessor |

The application is based on these facts:

I, Steven Ludman, being first duly sworn, hereby depose and state as follows:

- ☑ Continued on the attached sheet.
- ☐ Delayed notice of _____ days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Steven Ludman, Special Agent
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by
_____telephone_____ *(specify reliable electronic means)*

Date:  12/9/2024

_____
*Judge's signature*

City and state:  Harrisburg, PA

Susan E. Schwab, U.S. Magistrate Judge
*Printed name and title*

CONTINUATION SHEETS IN SUPPORT OF
APPLICATION FOR A SEARCH WARRANT

INTRODUCTION AND AGENT BACKGROUND

1.      I am a Special Agent with the Bureau of Alcohol, Tobacco,

Firearms and Explosives (ATF), United States Department of Justice,

and have been since so employed since October 2020.  I am a graduate

of the Federal Law Enforcement Training Center and ATF National

Academy.  I obtained a Bachelor's degree in Business Administration

from Millersville University in Millersville, Pennsylvania.  Prior to

joining ATF, I was employed as a police officer with the Manheim

Borough Police Department and Baltimore City Police Department.

2.      I am currently assigned to the ATF Philadelphia Field

Division, Harrisburg Field Office, comprised of ATF Special Agents

whose primary responsibilities include investigating individuals or

groups who have committed violations of the federal firearms,

explosives, and narcotics laws. I have written, participated in, and have

acquired knowledge of the execution of search warrants.

3.      The information contained in this affidavit is known to me

personally or has been relayed to me by other law enforcement officers,

1

or individuals assisting law enforcement officers, as indicated below.

Because this affidavit is being submitted for the limited purpose of

securing authorization to search the location below, I have not included

every fact known to me concerning this investigation.  I have submitted

only those facts and circumstances that I believe establish probable

cause to support the issuance of search warrants for the property

described herein.

4.     Based on the facts set forth in this affidavit, there is

probable cause to believe that **Joshua MARION** committed violations of

18 U.S.C. §922(g)(1) (Possession Of A Firearm By A Convicted Felon),

and 26 U.S.C. § 5861(d) (Receiving or Possessing Firearm Not

Registered To The Possessor In The National Firearms Registration

and Transfer Record).  There is also probable cause to search the

information described in Attachment A for evidence, instrumentalities,

or fruits of these crimes as further described in Attachment B.

## INVESTIGATION BACKGROUND AND PROBABLE CAUSE

5.     On August 23, 2024, New Cumberland Borough Police

(NCBP) Officer Jeff Freeze was contacted by Dauphin County Probation

Officer (PO) Sarah Collins who was conducting a check of the residence

of **Joshua MARION**, located at 316 Bridge Street, Apartment 4, New Cumberland, PA. PO Collins advised that **MARION** is being supervised for multiple crimes against a minor and that **MARION** is also registered as a sex offender. PO Collins also reported that **MARION** was recently involved in a shoplifting incident in Lower Paxton Township and had recently lost his job.

6.     PO Collins advised that she went to **MARION's** residence to conduct an in-person meeting and upon going inside the residence, the odor of marijuana was detected. **MARION** is prohibited from using controlled substances as a condition of his parole/probation and **MARION** does not have a medical marijuana card. After **MARION** admitted to smoking marijuana, PO Collins contacted her supervisor, Michael Heisey, who gave PO Collins permission to search **MARION's** residence.

7.     An initial search of **MARION's** residence by Dauphin County Probation yielded several fired .223 shell casings which prompted a more thorough search of **MARION's** residence, vehicle, white 2011 GMC Acadia, and garage which is a separate structure located at 422 Bridge Street, New Cumberland, PA, to determine if **MARION** was in possession of a firearm or similar contraband. **MARION** is prohibited from

3

possessing firearms and/or ammunition per the conditions of his probation and the fact that **MARION** is a convicted felon. The garage is rented by **MARION** who has exclusive access to the garage. Additionally, PO Collins is aware that **MARION** has a 1979 Chevrolet Nova bearing PA registration B4HE inside the garage.

8.    A search of **MARION's** vehicle, a white 2011 GMC Acadia bearing PA registration MKV4929 yielded a duffle bag containing dark clothing and a monocular night vision device. A search of **MARION's** garage, located at 422 Bridge St, New Cumberland, PA, yielded several items to include, but not limited to firearm parts consisting of a Springfield pistol slide, pistol barrel, and a silencer. The search also yielded a red and white iPhone under a floor mat in the trunk of a 1979 Chevrolet Nova bearing PA registration B4HE, which is also registered to **MARION**. Per **MARION's** probation conditions, he is not to own, use, or have under his control any electronic device that has not been approved by Dauphin County Probation. PO Collins was not aware of and did not approve the red and white iPhone. Additionally, all items found by Dauphin County Probation in the 2011 GMC Acadia and 422 Bridge Street garage were brought to 316 Bridge Street, Apartment 4 prior to

4

the end of Dauphin County Probation's search.

9.    The following image, which was taken by Dauphin County Probation, shows the red and white iPhone that was recovered in the trunk of the 1979 Chevrolet Nova, located in the garage at 422 Bridge Street.



10.    **MARION** is also subject to a condition of supervision where he must provide consent to a review of his electronics, to include providing his PIN and/or passwords for said electronics.    **MARION**

provided the passcode and consent to PO Collins to review his iPhone in a dark colored case that was found on **MARION's** person during the search and provided the passcode. During a review of **MARION's** cell phone, PO Collins discovered that **MARION** had purchased a pistol red laser light for a handgun as well as grip tape for a handgun via his Amazon account.



11. Additionally, PO Collins discovered that **MARION** was communicating via the messenger service on Alibaba asking about

purchasing a ballistic vest as depicted in the image below.



12.    Another iPhone in a black and red case was located on a tv stand in the living room during the search.   The iPhone background depicts a dark colored vehicle in a garage that appears to be the 1979 Chevrolet Nova in **MARION's** garage at 422 Bridge Street. The two images below capture both the phone and the garage.

8





13.    Upon completion of the search, Dauphin County Probation turned the apartment over to New Cumberland Borough Police while Dauphin County Probation took custody of MARION and transported him to Dauphin County Prison.  New Cumberland Borough Police met with the property owner, Lawrence Dolan, who secured the residence. New Cumberland Borough Police locked and secured both 316 and 422 Bridge Street with evidence tape.

14.    On August 24, 2024, search warrants were obtained and executed on the residence of 316 Bridge Street, Apartment 4, New Cumberland, PA, white 2011 GMC Acadia bearing PA registration MKV4929 and 422 Bridge Street, New Cumberland, PA.  A search of the residence yielded multiple items of evidentiary value initially discovered during the probation search including, but not limited to the following:

- One box containing a silencer, firearm parts including Springfield slide and barrel in kitchen (originally found in 422 Bridge Street and brought over by Dauphin County Probation)

- Two cameras, located on a desk in office

- One container with yellow/brown solid, suspected controlled substance on desk in bedroom

- One box and one bag each containing ziplock plastic bags on desk in bedroom

- One vaping device on desk in bedroom

- One ziplock bag holding syringes, cotton swabs for mushroom cultures on desk in bedroom

- One garbage bag containing child's smock, glitter, stickers, nerf guns and darts on the bedroom floor

11

- Three spent casings in a box on tv stand in living room

- One iPhone in a red case with drivers license, and VISA card belonging to **Joshua MARION** on tv stand in living room

- One laptop bag containing a HP laptop computer, power cord, gray Samsung tablet, security camera, three USB drives and a GPS tracker in front of tv stand in living room

- One night vision camera in box on tv stand in living room

- Film strips suspected to contain pornographic images on tv stand in living room

- One camo camera on tv stand in living room

- $1,500 U.S. currency in living room

- Red backpack containing garage door opener to 422 Bridge Street, two knives, night vision camera, red and white iPhone located in kitchen (originally found in 422 Bridge Street and brought over by Dauphin County Probation)

15.    Based on my training and experience, silencer possession and transfer is scrutinized more highly than those of semiautomatic firearm transfers and possession.  Prior to possession of a silencer, the correct paperwork must be completed and approved by the ATF

12

National Firearm Branch Division before a transfer in possession can take place. Additionally, silencers are classified as firearms and require a serial number.[1] As recent as December 05, 2024, the ATF NFA Branch confirmed that MARION does not have a silencer registered to him in the National Firearm Registration and Transfer Record.

16.    Based on my training and experience, I know that people who cannot legally possess firearms use their cellular telephones, laptops, and tablets (i.e. iPad, Kindle Fire, etc) to plan, coordinate, and execute both the commission of the crime and the concealment of the crime. More specifically, I know that people who engage in illegal firearm possession communicate with straw purchasers and firearm traffickers to facilitate illegal firearm activities. Based upon my training and experience, I know that people who illegally possess firearms will have more than one cellular phone to avoid detection by law enforcement and to distance themselves from incriminating

---

[1] Title 18 USC 921 defines a firearm as follows:  (A) any weapon (including a starter gun) which will or is designed to or may readily be converted to expel a projectile by the action of an explosive; (B) the frame or receiver of any such weapon; (C) any firearm muffler or **firearm silencer**; or (D) any destructive device. Such term does not include an antique firearm.  In regards to serialization of firearms, Title 26 USC § 5842 states the following:
Each manufacturer and importer and anyone making a firearm shall identify each firearm, other than a destructive device, manufactured, imported, or made by a serial number which may not be readily removed, obliterated, or altered, the name of the manufacturer, importer, or maker, and such other identification as the Secretary may by regulations prescribe.

evidence. There is probable cause to believe these devices found will likely contain text messages, call logs, photographs, purchase history or other data directly related to the illegal possession of firearms and ammunition.

17.     Based upon my training and experience, I know that people who possess illegal firearms and seek to acquire illegal firearms communicate with each other on cell phones, laptops and tablets via text message, email, and other electronic means and that a search of these devices will reveal evidence of these relationships, and their location.  Additionally, I know that people who cannot legally purchase firearms at a physical store will utilize their cellular phone or other electronic devices to access both legal and illegal online stores to purchase firearms and firearm parts and accessories.  Based upon my experience and training, there is probable cause to believe that searching the two cellular phones, laptop, and Samsung tablet that were seized from MARION's residence will provide evidence of where and how **MARION** came into possession of the seized firearm parts as well as any additional firearm related purchases that may have been made.  In addition, **MARION's** phones, laptop and Samsung tablet may

14

contain other information to include text messages, call logs, photographs, or other data directly related to illegal firearm possession and may aid law enforcement in identifying any co-conspirators.

18.    Based on my knowledge, training, and experience I understand the manner in which the electronic device listed in Attachment A was stored renders it in the same of substantially the same condition as when it was first brought into law enforcement's possession.

19.    Based on the facts set forth herein, I request authority to search **Joshua MARION's** cell phones, tablet and laptop computer, described in Attachment A, for evidence of his violations of Title 18 U.S.C. § 922(g)(1) (Possession Of A Firearm By A Convicted Felon) and Title 26 U.S.C. § 5861(d) (Receiving or Possessing an NFA Firearm Not Registered To The Possessor In The NFRTR).

<u>TECHNICAL TERMS</u>

20.    Based on my training and experience, I use the following technical terms to convey the following meanings:

a. Cellular telephone:  A cellular telephone (or wireless telephone or mobile telephone) is a handheld wireless device used for voice

and data communication through radio signals. These
telephones send signals through networks of
transmitter/receivers, enabling communication with other
wireless telephones or traditional "land line" telephones. A
wireless telephone usually contains a "call log," which records
the telephone number, date, and time of calls made to and from
the phone. In addition to enabling voice communications,
wireless telephones offer a broad range of capabilities. These
capabilities include: storing names and phone numbers in
electronic "address books;" sending, receiving, and storing text
messages and e-mail; taking, sending, receiving, and storing still
photographs and moving video; storing and playing back audio
files; storing dates, appointments, and other information on
personal calendars; and accessing and downloading information
from the Internet. Wireless telephones may also include global
positioning system ("GPS") technology for determining the
location of the device.

b. GPS:  A GPS navigation device uses the Global Positioning
System to display its current location. It often contains records

16

of the locations where it has been. Some GPS navigation devices can give a user driving or walking directions to another location. These devices can contain records of the addresses or locations involved in such navigation. The Global Positioning System (generally abbreviated "GPS") consists of 24 NAVSTAR satellites orbiting the Earth. Each satellite contains an extremely accurate clock. Each satellite repeatedly transmits by radio a mathematical representation of the current time, combined with a special sequence of numbers. These signals are sent by radio, using specifications that are publicly available. A GPS antenna on Earth can receive those signals. When a GPS antenna receives signals from at least four satellites, a computer connected to that antenna can mathematically calculate the antenna's latitude, longitude, and sometimes altitude with a high level of precision.

c. IP Address: An Internet Protocol address (or simply "IP address") is a unique numeric address used by computers on the Internet. An IP address is a series of four numbers, each in the range 0-255, separated by periods (e.g., 121.56.97.178). Every

17

computer attached to the Internet must be assigned an IP address so that Internet traffic sent from and directed to that computer may be directed properly from its source to its destination. Most Internet service providers control a range of IP addresses. Some computers have static—that is, long-term—IP addresses, while other computers have dynamic—that is, frequently changed—IP addresses.

d. Internet: The Internet is a global network of computers and other electronic devices that communicate with each other. Due to the structure of the Internet, connections between devices on the Internet often cross state and international borders, even when the devices communicating with each other are in the same state.

e. Digital camera: A digital camera is a camera that records pictures as digital picture files, rather than by using photographic film. Digital cameras use a variety of fixed and removable storage media to store their recorded images. Images can usually be retrieved by connecting the camera to a computer

18

or by connecting the removable storage medium to a separate reader. Removable storage media include various types of flash memory cards or miniature hard drives. Most digital cameras also include a screen for viewing the stored images. This storage media can contain any digital data, including data unrelated to photographs or videos.

f. Portable media player: A portable media player (or "MP3 Player" or iPod) is a handheld digital storage device designed primarily to store and play audio, video, or photographic files. However, a portable media player can also store other digital data. Some portable media players can use removable storage media. Removable storage media include various types of flash memory cards or miniature hard drives. This removable storage media can also store any digital data. Depending on the model, a portable media player may have the ability to store very large amounts of electronic data and may offer additional features such as a calendar, contact list, clock, or games.

g. PDA:    A personal digital assistant, or PDA, is a handheld electronic device used for storing data (such as names, addresses, appointments or notes) and utilizing computer programs.  Some PDAs also function as wireless communication devices and are used to access the Internet and send and receive e-mail.  PDAs usually include a memory card or other removable storage media for storing data and a keyboard and/or touch screen for entering data.   Removable storage media include various types of flash memory cards or miniature hard drives.  This removable storage media can store any digital data.  Most PDAs run computer software, giving them many of the same capabilities as personal computers.  For example, PDA users can work with word-processing documents, spreadsheets, and presentations.  PDAs may also include global positioning system ("GPS") technology for determining the location of the device.

h. Tablet:  A tablet is a mobile computer, typically larger than a phone yet smaller than a notebook, that is primarily operated by touching the screen.    Tablets function as wireless communication devices and can be used to access the Internet

20

through cellular networks, 802.11 "wi-fi" networks, or otherwise. Tablets typically contain programs called apps, which, like programs on a personal computer, perform different functions and save data associated with those functions.  Apps can, for example, permit accessing the Web, sending and receiving e-mail, and participating in Internet social networks.

21.  Based on my training, experience, and research, I know that the Devices listed in Attachment A have capabilities that allow it to serve as a wireless telephone, digital camera, portable media player, GPS navigation device, and/or PDA.  In my training and experience, examining data stored on devices of this type can uncover, among other things, evidence that reveals or suggests who possessed or used the device.  Additionally, the cellular telephones, laptop and Samsung tablet may contain call logs, address books, text messages, emails, videos, photographs, or other stored data relevant to this investigation.

## ELECTRONIC STORAGE AND FORENSIC ANALYSIS

22.  Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods of time.

Similarly, things that have been viewed via the Internet are typically stored for some period of time on the device. This information can sometimes be recovered with forensics tools.

23. *Forensic evidence*. As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how the Device was used, the purpose of its use, who used it, and when. There is probable cause to believe this forensic electronic evidence might be on the Device because:

a. Data on a storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file).

b. Forensic evidence on a device can also indicate who has used or controlled the device. This "user attribution"

evidence is analogous to the search for "indicia of

occupancy" while executing a search warrant at a residence.

c.  A person with appropriate familiarity with how an

electronic device works may, after examining this forensic

evidence in its proper context, be able to draw conclusions

about how electronic devices were used, the purpose of their

use, who used them, and when.

24.  *Nature of examination.*  Based on the foregoing, and

consistent with Rule 41(e)(2)(B), the warrant I am applying for would

permit the examination of the devices consistent with the warrant.  The

examination may require authorities to employ techniques, including,

but not limited to computer-assisted scans of the entire medium, that

might expose many parts of the device to human inspection in order to

determine whether it is evidence described by the warrant.

## CONCLUSION

25.  For the reasons set forth above, I believe there is probable

cause to search the item described in in Attachment A for evidence of

violations of 18 U.S.C. §922(g)(1) (Possession Of A Firearm By A

Convicted Felon) and 26 U.S.C. § 5861(d) (Receiving or Possessing an NFA Firearm Not Registered To The Possessor In The NFRTR). I believe there is probable cause to conduct a search of this cellular telephone consistent with Attachment B which permits a search of all stored data to include, but not limited to contents of the telephone directory, electronic libraries, stored communications including voice mail, voice messages and text messages, contact lists, applications, reference material aiding in the furtherance of criminal activity, photographs, time and date stamps, Global Positioning System (GPS) data, stored internet searches and any other memory feature relating to the offenses outline in the affidavit of probable cause.

## ATTACHMENT A

### Property to Be Searched

The property to be searched is a grey Apple iPhone in a red case recovered from 316 Bridge Street, Apartment 4, New Cumberland, Pennsylvania on August 24, 2024. The devices are currently located in the custody of the Cumberland County Forensic Laboratory, located at 1601 Ritner Highway, Carlisle, PA 17013.

## ATTACHMENT B

### Particular Items to Be Seized

All information and records on the Device described in Attachment A that relate to violations of 18 U.S.C. §922(g)(1) (Possession Of A Firearm By A Convicted Felon), and 26 U.S.C. § 5861(d) (Receiving or Possessing Firearm Not Registered To The Possessor In The National Firearms Registration and Transfer Record), including, but not limited to:

1.     Electronic libraries containing evidence of the above described crimes;

2.     Stored communications including voice mail, voice messages and text messages, contact lists, applications, reference material aiding in the furtherance of criminal activity;

3.     Photographs;

4.     Time and date stamps;

5.     Global Positioning System (GPS) data;

6.     Stored internet searches;

7.     Any other memory feature relating to the offenses outlined in the affidavit of probable cause.

8.      Call logs, subscriber information, phonebooks, saved usernames and passwords, documents, and browsing history;

9.      Evidence of user attribution.

As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage (such as flash memory or other media that can store data) and any photographic form.

2